**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

**In re:**

**OUTDOOR BY DESIGN LLC**                    Case No. 8:20-bk-04253-CED
                                             Chapter 11

      **Debtor.**
_____/

**MOTION BY BANK OF THE WEST**
**TO COMPEL DEBTOR TO PAY POST-PETITION LEASE PAYMENTS**

**BANK OF THE WEST**, by and through its undersigned counsel, pursuant to Section 365(d)(5) of the United States Bankruptcy Code, files its Motion to Compel the Debtor to pay post-petition lease payments which are due under an equipment financing lease, and states:

1. On June 1, 2020, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On or about May 9, 2018, the Debtor and Manufacturers Financing Services ("MFS") entered into an Equipment Lease for the lease of a Sun 3D Printer, and MFS assigned the Equipment Lease to Bank of the West. A true and authentic copy of the Equipment Lease and Assignment is attached.

3. The Debtor continues to have possession of the leased printer.

4. Pursuant to paragraph 2 of the Terms and Conditions of the Equipment Lease, the parties agreed that the Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code.

5. The Equipment Lease is an unexpired lease for personal property under Section 365 of the Bankruptcy Code. Pursuant to Section 365(d)(5), the Debtor is required to pay all lease payments arising 60 days after the order for relief.

6. For purposes of Section 365(d)(5), the first required lease payment was due and owing on August 15, 2020. The Debtor has failed to make this payment. The Debtor is in violation of Section 365(d)(5) for failing to pay the August lease payment.

**WHEREFORE,** Bank of the West requests this Court to enter an order requiring the Debtor to pay all post-petition lease payments arising or on after August 1, 2020, or to require Debtor to reject the lease and surrender the equipment.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Compel has been filed by CM/ECF on August 17, 2020, and that an electronic copy will be furnished via ECF to **Debtor's Attorney**, Benjamin G. Martin and **Trustee,** and **U.S. Trustee**, Nicole Peair, and a copy by U.S. Mail will be furnished to **Debtor**, Outdoor by Design LLC, 7839 Fruitville Road, Sarasota, FL 34240.

/s/ Jason A. Rosenthal
Jason A. Rosenthal

**EQUIPMENT LEASE NO.** 2018000450

Manufacturers Financing Services ("Lessor") hereby leases to the undersigned ("Lessee") the equipment described below ("Equipment") under the terms and conditions contained herein which, together with all riders, schedules, exhibits and amendments hereto, is hereinafter referred to as the ("Lease").

| LESSEE | | VENDOR | |
|---|---|---|---|
| Name: | Great Leisure USA, LLC | Name: | Sun 3D Corporation |
| dba: | Co-Lessee Outdoor by Design LLC | | See Schedule "A" for additional vendor(s) (if applicable) |
| Address: | 6264 Nesbitt Road | Address: | 2550 North Powerline Road Suite 104 |
| | Fitchburg, WI 53719 | | Pampano Beach, FL 33069 |
| Telephone: | 608-441-9600 Fax: 608-276-4422 | Telephone: | 954-418-5454 Fax: |
| Contact: | Peter Hill | Contact: | Gustavo Lopez |

### EQUIPMENT SCHEDULE

| Quantity | Description | Model No. | Serial No. |
|---|---|---|---|
| 1 | Sun 3D Printer Equipped with all standard and together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto. | 645 UV-LED | |

The Equipment shall be delivered to and located at: 2160 Whitefield Avenue, Sarasota, FL 34243

### PAYMENT SCHEDULE

**PAYMENTS**
Payments shall be made in Sixty-Two consecutive installments throughout the Lease term, commencing on the Acceptance Date of the equipment (the "Term Commencement Date") and the remaining installments are to commence 30 days from the Term Commencement Date and are due the same day of each successive month. Each Payment shall be in the amount set forth below.

| PAYMENT NO. | PAYMENT AMOUNT |
|---|---|
| #1 | $2,321.00 (Plus Use Tax) |
| #2-#3 | $0.00 (Plus Use Tax) |
| #4-#62 | $2,321.00 (Plus Use Tax) |

Lease Term: 62 months commencing on the Term Commencement Date.
Advance Payments: First & Last Payable upon signing of this lease.
Documentation Fee: $400.00
Security Deposit: $0.00
Purchase Option: $1.00
Sales/Use Tax: Payment amount may be increased to include applicable sales/use tax.

THIS LEASE INCLUDES ALL OF THE TERMS AND CONDITIONS HEREIN WHICH THE PARTIES ACKNOWLEDGE THEY HAVE READ. THIS LEASE IS NOT BINDING ON LESSOR PARTY UNTIL EXECUTED BY LESSOR. This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof. There are no other representations, warranties or agreements except as set forth herein (including, without limitation, rights to purchase any of the Equipment). All amendments and waivers shall be written and signed by the parties hereto. The term "Lessee" as used herein shall mean and include any and all Lessees who sign hereunder, each of whom shall be jointly and severally bound thereby. This Lease will not be binding on Lessor until accepted and executed by Lessor.

LESSEE INITIALS: X _____

AGREED AND ACCEPTED BY:
Manufacturers Financing Services
By: _____ Darryl Schoen
Title: President
Date: May 9, 2018

**MFS MANUFACTURERS FINANCING SERVICES**

10370 Slusher Drive, Suite 10
Santa Fe Springs, CA 90670

Dated as of: April 26, 2018
Lessee: Great Leisure USA, LLC
By: X _____
Title: Managing Member
Attest: X _____ (Witness)

Co-Lessee: Outdoor by Design LLC
By: X _____
Title: Managing Member
Attest: X _____ (Witness)

Guarantor: Donald D. Corning
By: X _____
Title: Individual
Attest: X _____ (Witness)



## TERMS AND CONDITIONS

**1. DELIVERY AND ACCEPTANCE OF EQUIPMENT**
The Equipment is to be delivered and installed at Lessee's expense at the location specified on the face of this Lease and shall be deemed to have been accepted by Lessee for all purposes under this Lease upon Lessor's receipt of the Acceptance Certificate hereto executed by Lessee. Lessor shall not be liable or responsible for any failure or delay in the delivery of the Equipment to Lessee for whatever reason.

**2. TERM AND PAYMENTS**
The Lease Term shall commence on the Term Commencement Date and shall continue for the number of months set forth on the face hereof beyond the Term Commencement Date. Payments ("Payments") shall commence on the Term Commencement Date and shall be due and payable as set forth on the face hereof. The Lease Term - shall automatically extend beyond its original expiration date, on the same terms and conditions (including payments) unless ninety (90) days prior to the expiration of the Lease Term, Lessee gives Lessor written notice of Lessee's election to extend the Lease Term, purchase the Equipment or return the Equipment under the terms hereof. Lessee shall pay an administrative late charge of 5% of the amount of any overdue payment plus interest on such delinquent payment of 1 1/2% per month or the maximum amount permitted by law, whichever is lower. All payments to be made to Lessor shall be made to Lessor at the address shown on the face hereof or at such other place as Lessor shall specify in writing.

If a Fair Market Value Purchase Option is indicated on the face hereof, then so long as no Event of Default has occurred and is continuing hereunder and upon at least ninety (90) days prior written notice to Lessor, Lessee shall have the option at the expiration of the initial Lease Term of this Lease to: 1) purchase all, but not less than all, of the Equipment for an amount equal to the Fair Market Value of the Equipment (plus any taxes applicable at the time of purchase) on the date of the expiration of the initial Lease Term (the "Purchase Date) or, 2) to extend the Lease Term covering all, but not less than all, of the Equipment for a mutually agreed upon period. This Lease shall continue in effect following said extended period until terminated by either party upon not less than ninety (90) days prior written notice. Title to the Equipment shall automatically pass to Lessee on the Purchase Date, provided Lessee had paid the full purchase price. The Fair Market (Rental) Value shall be determined on the basis of and shall be aggregate amount which would be obtainable at the expiration of the initial Lease Term in an arm's length transaction between an informed and willing buyer/user (Lessee) and an informed and willing seller (Lessor) under no compulsion to sell.

The parties agree that the Lease is a "Finance Lease" as defined in Section 2 A of the Uniform Commercial Code ("UCC"). The Lessee may contact the manufacturer of the Equipment (Manufacturer) for a copy of or a description of any rights the Lessee may have arising from a purchase order or supply contract. This Lease cannot be cancelled or terminated by Lessee except as expressly provided herein.

**3. TAXES AND OTHER CHARGES**
Lessee shall pay when due, and defend and indemnify Lessor against liability for, all fees, charges, assessments, and taxes of any kind whatsoever (including any related interest or penalties) now or hereafter imposed by any governmental entity upon the Lease or the Equipment, or with respect to the manufacturing, ordering, shipment, purchase, sale ownership, delivery, leasing, operation, possession, use, return, or other disposition thereof or the rental hereunder (other than taxes on or measured solely by the net income of a Lessor).

If a Fair Market Value purchase option is indicated on the face hereof, Lessor shall be entitled to claim Tax Benefits (hereinafter defined), then, in the event Lessor shall not be entitled, for any reason, to all or any portion of the Tax Benefits (a "Loss"), and after 30 days written notice from Lessor that a Loss has occurred, Lessee shall pay to Lessor a lump sum amount as stated in the notice which, in Lessor's reasonable opinion, will cause Lessor's after-tax economic yield and overall net after tax cash flows to be maintained at the same level as though the Loss had not occurred. As used in this Section, "Tax Benefits" means any deduction under Section 168 of the Internal Revenue Code of 1986 and interest deductions with respect to any indebtedness incurred by Lessor with respect to acquisition of Equipment by Lessor, and assuming an effective corporate tax rate on Lessor of 34%.

**4. INDEMNITY**
Lessee shall bear all risk of loss with respect to the Equipment and indemnify and hold harmless, and defend Lessor against (a) any liabilities and expenses whatsoever (including legal expenses of every kind and nature) arising out of the manufacturing, ordering, purchase, shipment, acceptance or rejection, ownership, titling, registration, leasing, possession, operation, use, return, or other disposition of the Equipment, including patent or latent defects, any claims based on absolute tort liability, warranty or patent, trademark or copyright infringement; and (b) any obligation or liability to the Manufacturer of the Equipment arising under any purchase orders issued by or assigned to Lessor.

The covenants and indemnities contained in this Section 4 and Section 3 shall survive the termination of this Lease and shall be payable by Lessee within 7 days of Lessor's written demand thereof.

Lessor shall have the right to recover from Lessee any expenses paid or incurred by Lessor in connection with the repossession, transporting, holding, insuring, repairing, refurbishing and subsequent sale, lease or other disposition of the Equipment including reasonable attorneys fees and legal expenses.

**5. POSSESSION; INSPECTION; PERSONAL PROPERTY**
Provided no Event of Default has occurred, Lessee shall have quiet possession of the Equipment during the Lease Term. Lessor may require Lessee at Lessee's expense, to affix plates or markings on the Equipment indicating Lessor is the owner. Lessor may enter the Equipment location at reasonable times upon reasonable notice to inspect the Equipment or show it to prospective purchasers or lessees. The Equipment shall remain personal property even though attached or affixed to real property.

**6. DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY**
LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, DESIGN, CONDITION, CAPACITY, DURABILITY, QUALITY OF MATERIAL OR WORKMANSHIP, CONFORMITY WITH ANY DESCRIPTION OR PATENT INFRINGEMENT, AND HEREBY DISCLAIMS ANY SUCH WARRANTY. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE EQUIPMENT. DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. LESSEE HAS MADE THE SELECTION OF EACH ITEM OF EQUIPMENT BASED ON ITS OWN JUDGEMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSEE LEASES THE EQUIPMENT "AS IS."

**7. REPRESENTATIONS, WARRANTIES AND COVENANTS**
Lessee represents, warrants and covenants with Lessor that: (a) Lessee has the form of business organization indicated on the face hereof, and is duly organized, existing, in good standing and qualified to do business wherever necessary to carry on its present business and operations and to own its property; (b) this Lease has been duly executed and authorized, requires no further shareholder or partner approval of, or the giving notice to, any governmental authority and does not to contravene any law, regulation or other governmental order, any certificate or articles of incorporation or by-laws or partnership certificate or agreement, or any agreement, indenture or other instrument to which Lessee is a party or by which it may be bound and constitutes a legal, valid and binding obligation of Lease enforceable in accordance with its terms; (c) Lessee shall not allow any lien, encumbrance or

Page 2 of 4                                                                                                                        Initials: X _____



security interest on or with respect to the Equipment or Lease (except by, through or under Lessor) and shall not assign, sell, sublease, or otherwise dispose of any right or interest in this Lease or the Equipment without the prior written consent of Lessor; (d) the Equipment will be used solely in the conduct of Lessee's business and will remain in the location shown on the face hereof. If Lessee is a corporation, a Secretary or Assistant Secretary, by attesting to the execution by the Lessee on the face hereof, certifies that the officer signing on behalf of the Lessee has been duly authorized and empowered to execute this Lease on behalf of the Lessee by appropriate vote of Lessee's Board of Directors or under Lessee's by laws, that such officer did so execute this Lease, and that this Lease has been duly authorized and approved by or under such vote or by-laws.

### 8. DEFAULT
Lessee shall be in default of this Lease upon: (a) failure to pay rent within 10 days of the due date thereof; or (b) failure to perform or observe any covenant, condition or agreement of this Lease where such failure continues for 10 business days after notice thereof to Lessee, or default under any note, security agreement, equipment lease or title retention or conditional sales agreement beyond any period of grace provided with respect thereto whether with Lessor or any third party if the effect of such default is to cause or permit the holder of such indebtedness to cause such indebtedness to become due prior to its stated maturity; or (c) any representation or warranty made by Lessee to Lessor shall prove to be incorrect in the condition of Lessee's affairs shall change so as in the opinion of Lessor to impair materially Lessor's interest or increase materially Lessor's credit risk; or (d) Lessee shall generally not pay its debts as they become due; file or have filed against it a petition under any bankruptcy or insolvency law of any jurisdiction, make an assignment for the benefit of its creditors; consent to the appointment of a custodian, receiver, trustee or other officer with similar powers of itself or any substantial part of its property; be adjudicated insolvent or be liquidated; or take any action for the purpose of the foregoing; or (e) Lessee or any Guarantor of Lessee is declared legally deceased (if sole proprietor or general partner) or if Lessee shall terminate its existence by merger, consolidation, sale of substantially all of its assets or otherwise.

### 9. REMEDIES
Upon default, Lessor may exercise any of the following remedies with respect to any or all Equipment (which for purposes of this Section 9 includes all other personal property Lessee at any time leases or has leased from Lessor or that secures or has secured any indebtedness of Lessee to Lessor); (a) enter the Equipment location and take immediate possession of and remove the same by summary proceedings or otherwise, all without liability to Lessor for or by reason of damage to property or such entry or taking possession; (b) sell any or all of the Equipment at public or private sale, re-lease, or otherwise dispose of the Equipment; (c) remedy such default for the account of and at the expense of Lessee; (d) terminate this Lease immediately by written notice to Lessee, whereupon Lessee shall without further demand but at Lessor's option, as liquidated damages for loss of a gain and not as a penalty, forthwith pay Lessor an amount equal to all accrued and unpaid Payments plus the Present Value of all future Payments and Lessor's original anticipated residual, all discounted using a rate of three percent (3%) per annum plus all other amounts then payable to Lessor hereunder, and (e) exercise any other right or remedy at law, or in equity or bankruptcy, including specific performance or damages for the breach hereof, including reasonable attorney's fees and court costs.

Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver of any default shall constitute a waiver of any Lessor's other rights.

### 10. ADDITIONAL SECURITY
In order to more fully secure its obligations to Lessor hereunder, Lessee hereby grants to Lessor, a security interest in any and all such personal property as Lessee from time to time leases from Lessor or that secures any indebtedness of Lessee to Lessor. Lessor may apply at any time Lessee's Security Deposit to Lessee's obligations hereunder whereupon Lessee shall immediately reimburse Lessor for the amount of the Security Deposits so applied.

### 11. NOTICES
Any notices and demands required or permitted under this Lease shall be in writing by registered or certified mail, return receipt requested, and shall become effective when deposited in the United States mail with postage prepaid at the address herein above set forth, or to such other address as the party to receive notice hereafter designates by such written notice.

### 12. USE; REPAIRS; LOSS AND DAMAGE
Lessee will operate the Equipment in accordance with any applicable Manufacturer's manuals by competent and duly qualified personnel only, in accordance with applicable requirements of law, if any, and for business purposes only. Lessee, at its own cost and expense, shall keep the Equipment in good repair, condition and working order. If any item of Equipment shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or use of such item, Lessee shall promptly pay Lessor an amount equal to the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining unpaid plus the amount of any purchase option or obligation with respect to such item.

### 13. INSURANCE
Lessee shall procure and maintain during the entire term of this Lease, at Lessee's expense, such insurance coverages in such amounts and with such responsible insurers, all as satisfactory to Lessor including: (a) Comprehensive General Liability Insurance with minimum limits of $1,000,000 each occurrence with Lessor named as additional insured; and (b) all Risk Physical Damage Insurance in an amount not less than the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining plus the amount of any purchase option or obligation with respect to such item. Lessor will be named as loss payee. Lessee shall waive Lessee's rights and its insurance carrier's right of subrogation against Lessor for any and all loss or damage. All policies shall contain a clause requiring the insurer to furnish Lessor with at least 30 days prior written notice of any material change, cancellation, or non-renewal of coverage. Upon request by Lessor, Lessee shall furnish Lessor with a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverages are in effect.

### 14. GUARANTY
In order to induce Lessor to enter into this Lease, each guarantor executing on the face hereof hereby unconditionally and absolutely guarantees payment to Lessor of all liabilities of Lessee to Lessor of whatever nature, whether now existing or hereinafter incurred, including reasonable attorney's fees and costs of collection with respect to the enforcement of any such liabilities or this guaranty. This is a guaranty of payment and not of collection and the liability of each guarantor shall not be affected by any invalidity in or unenforceability of such liabilities, change, alteration, renewal, extension, continuation, compromise, waiver or other modification of such liabilities, any of which may be done without notice to or the consent of any guarantor. Each guarantor waives notice of acceptance of this guaranty and of extensions of credit by Lessor to Lessee, presentment and demand for payment of any of the liabilities of the Lessee, protest and notice of dishonor of default to such guarantor of any other party with respect to such liabilities and all other notices, demands, set-offs, counterclaims and defenses of any nature whatsoever. This guaranty may be enforced by Lessor without first proceeding against the Lessee or any other party or against any security which may be available with respect to the Lessee's liabilities. In the event of any default by the Lessee on any obligation owed to the Lessor, whether under this Lease or otherwise, each guarantor agrees not to demand, take steps for the collection of, or assign, transfer or otherwise dispose of any indebtedness

Initials: X_____

Page 3 of 4


**MANUFACTURERS FINANCING SERVICES**

owed by the Lessee to such guarantor. Lessor shall have the sole right to demand, receive, sue for, collect, receipt for and give full discharge for such indebtedness until all of the liabilities of the Lessee to the Lessor have been satisfied in full. If guarantor is a corporation, guarantor certifies that the officer signing on behalf of the guarantor has been duly authorized and empowered to execute and deliver to Lessor this guaranty and that the guaranty has been duly authorized and approved by and under appropriate vote of the guarantor's Board of Directors or its by-laws. No guarantor shall be released or discharged, either in whole or in part, by Lessor's failure or delay to perfect or continue the perfection of any security interest in any property which secures the liabilities of Lessee to Lessor or to protect the property covered by such security interest. Each guarantor waives any duty on Lessor's part (should such duty exist) to disclose to any guarantor any fact or thing related to the business operations or conditions (financial or otherwise) of the Lessee or its property whether now or hereafter known by Lessor.

### 15. FURTHER ASSURANCES
Lessee shall promptly execute and deliver to Lessor such further documents and take such further actions Lessor may require in order to more effectively carry out the intent and purpose of this Lease. Lessee shall provide to Lessor within 120 days after the close of each Lessee's fiscal year, and upon Lessor's request, within 45 days of the end of each quarter of Lessee's fiscal year, a copy of its financial statements prepared in accordance with generally accepted accounting principles, it being understood that all such material shall be held in confidence by Lessor. Lessee hereby appoints Lessor, with full power of substitution, as its agent and attorney-in-fact, which is irrevocable and coupled with an interest, to execute any such financing statements under the Uniform Commercial Code and any appropriate amendments thereto on Lessee's behalf which Lessor deems necessary to protect Lessor's interest in the Equipment. Lessor may file a duplicate or a photocopy of this Lease as a financing statement. In no event shall Lessee lease or otherwise finance upgrades or additions to Equipment with any party other than Lessor without prior written consent of Lessor.

### 16. ASSIGNMENT
This Lease and all rights of Lessor hereunder shall be assignable by Lessor absolutely or as security, without notice to Lessee, subject to the rights of Lessee hereunder. The term Lessor shall mean, as the case may be, any assignee of Lessor. Any such assignment shall not relieve Lessor of its obligation hereunder unless specifically assumed by assignee, and Lessee agrees it shall pay such assignee without any defense, rights of set-off, or counterclaims and shall not hold or attempt to hold such assignee liable for any Lessor's obligations hereunder. LESSEE MAY NOT SUBLEASE NOR ASSIGN ITS RIGHTS OR OBLIGATIONS HEREUNDER WITHOUT LESSOR'S PRIOR WRITTEN CONSENT.

### 17. LESSEE'S OBLIGATIONS UNCONDITIONAL
This Lease is a net lease and Lessee shall not be entitled to any abatement of any amount payable hereunder and such payments will be made absolutely and unconditionally without set-off, counterclaim, recoupment, defense or other right which Lessee may have against any person for any reason whatsoever.

### 18. RETURN OF EQUIPMENT
Upon expiration of the Lease Term, if the Lessee chooses not to promptly exercise the Purchase Option, Lessee, at its own expense, shall immediately return the Equipment in the same condition as when delivered to Lessee, ordinary wear and tear excepted, to such location as Lessor shall designate, free and clear of all liens, encumbrances and rights of others pursuant to Manufacturer's de-installation, packing and shipping specification. Upon return of Equipment, Lessee shall provide Lessor with a certificate from the Manufacturer or qualified maintenance organization acceptable to Lessor stating that the Equipment has been inspected, tested, and qualifies for their regular maintenance contract and is in the same condition as at the Acceptance Date (ordinary wear and tear resulting from proper use excepted).

In the event that Lessee does not provide such a certificate, Lessor shall have the right to have the Equipment inspected and tested and Lessee shall pay Lessor the cost of such inspection and testing, and any repairs necessary for the Manufacturer or maintenance organization to accept the Equipment under a maintenance contract at it's then standard rates. Lessee shall remain obligated to pay Rent on the unreturned and uncertified Equipment until Lessor has been provided with such certificate or such acceptance. The risk of loss and obligation to insure the Equipment shall remain with the Lessee until the returned Equipment is accepted by Lessor. In the event Lessee shall not surrender up and redeliver the Equipment to Lessor as herein required, the term of this Lease with respect to such Equipment shall continue on a month-to-month basis terminable by Lessor upon 30 days advance written notice as a rent per month equal to the highest monthly rent for the equipment payable during the Lease Term.

### 19. MISCELLANEOUS
Any provision of the Lease which is unenforceable shall not affect the enforceability of the remaining provisions hereof. A waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon Lessee by Section 2A of the UCC. This Lease shall in all aspects be governed by and construed in accordance with the law of the State of California, including all matters of construction, validity, and performance.

Page 4 of 4

Initials: X /HO/

## ACCEPTANCE CERTIFICATE TO EQUIPMENT LEASE NO. 2018000450

Manufacturers Financing Services ("Lessor") hereby leases to the undersigned ("Lessee") the equipment described below ("Equipment") under the terms and conditions contained herein which, together with all riders, schedules, exhibits and amendments hereto, is hereinafter referred to as the ("Lease").

| LESSEE | VENDOR |
|---|---|
| Name: Great Leisure USA, LLC<br>dba: Co-Lessee Outdoor by Design LLC<br>Address: 6264 Nesbitt Road<br>Fitchburg, WI 53719<br>Telephone: 608-441-9600  Fax: 608-276-4422<br>Contact: Peter Hill | Name: Sun 3D Corporation<br>See Schedule "A" for additional vendor(s) (if applicable)<br>Address: 2550 North Powerline Road Suite 104<br>Pampano Beach, FL 33069<br>Telephone: 954-418-5454  Fax:<br>Contact: Gustavo Lopez |

### EQUIPMENT SCHEDULE

| Quantity | Description | Model No. | Serial No. |
|---|---|---|---|
| 1 | Sun 3D Printer<br>Equipped with all standard and together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto. | 645 UV-LED | |

The Equipment shall be delivered to and located at: 2160 Whitefield Avenue, Sarasota, FL 34243

1. The undersigned Lessee acknowledges that the Equipment set forth above is hereby unconditionally accepted by the Lessee for all purposes under the Lease and hereby agrees to faithfully perform all of its obligations under the Lease with respect to the Equipment as of the date hereof. Lessee hereby authorizes and directs Lessor to make payments to the above Vendor pursuant to Vendor's invoice or any purchase order or agreement with such Vendor.
2. Lessee hereby agrees to pay Lessor Payments, as set forth in the Lease plus any applicable taxes at the time and in the manner set forth in the Lease.

AGREED AND ACCEPTED BY:
Manufacturers Financing Services

By: _Darryl Schoen_
    Darryl Schoen
Title: President
Date: May 9, 2018

Dated as of: X _____ 5/7/2018
            (THE "ACCEPTANCE DATE")

Lessee: Great Leisure USA, LLC
By: X
Title: Managing Member
Attest: X _____ (Witness)

Co-Lessee: Outdoor by Design LLC
By: X
Title: Managing Member
Attest: X _____ (Witness)



**MFS MANUFACTURERS FINANCING SERVICES**

10370 Slusher Drive, Suite 10
Santa Fe Springs, CA 90670



## RATE LOCK ADDENDUM

This Addendum is made a part of the Equipment Lease #2018000450 ("Lease") identified by and between **Great Leisure USA, LLC DBA Co-Lessee Outdoor by Design LLC** ("you" and "your") and **Manufacturers Financing Services** ("we", "us" and "our"). Capitalized terms used but not defined will have the same meaning given to them in the Lease.

The parties wish to amend the above referenced Lease by adding the following language:

> The payments due hereunder shall be recalculated when we receive a fully executed Delivery & Acceptance Certificate (such date being the "Acceptance Date"). You agree that the Lease Payments may be increased by us if there has been a change in the yield of "Interest Rate Swaps **five-year**" rates as published by the Intercontinental Exchange (ICE) Benchmark Administration, currently **2.95%**, (the "Base Rate"). Thereafter, the Payments shall remain fixed during the term.
>
> The amount of any such adjustment shall be determined by changing the implicit rate of the Lease by one (1) basis point for every basis point increase in the Base Rate as published on the Acceptance Date. No change will be reflected in any Lease Payments collected in advance of the adjustment. We will provide you with a written notice of any upward adjustment in the Lease Payments.

This Addendum supplements and amends the Lease identified above only to the extent and in the manner set forth, and in all other respects the Lease will remain in full force and effect.

| Manufacturers Financing Services (Lessor) | Great Leisure USA, LLC (Lessee) |
|---|---|
| By: *[signature]* | By: X *[signature]* |
| Title: President | Title: Managing Member |
| Date: May 9, 2018 | Date: X 5/7/2018 |
| | Co-Lessee: Outdoor by Design LLC |
| | By: X *[signature]* |
| | Title: Managing Member |
| | Date: X 5/7/2018 |



# Assignment of Lease
# Without Recourse and With Private Servicing

For value received, the undersigned (the "Assignor") sells and assigns to Trinity Vendor Finance, a Division of Bank of the West (the "Assignee") and its successors and assigns, without recourse as to the financial ability of the Lessee to pay, all of its interest, right, title and interest in (a) the lease (the "Lease") described below, all rent payments due and to become due thereunder, proceeds of the Lease, including insurance proceeds; (b) all collateral for the Lease, including guarantees; and (c) all rights under subordination agreements with third party owners, secured parties and landlords and/or mortgagees with respect to real estate on which the property may be installed or to which it may be affixed. As security for payment of the rents, the Assignor also grants to Assignee a security interest in the property described in the Lease, and the right, either in the Assignee's own behalf or in the Assignor's name, to take all proceedings, legal, equitable or otherwise.

The Lessee under the Lease is **Great Leisure USA, LLC DBA Co-Lessee Outdoor by Design LLC**, the Lease Number is **2018000450** and the Lease is dated **April 26, 2018**. At the time of this assignment, the number and amount of payments being assigned are **60** payments; **2** payments of **$0.00**, followed by **58** payments of **$2,321.00**, the first of which is due to be paid to Assignee on     **June 7, 2018**    .

For the purpose of inducing the Assignee to enter into this assignment agreement, the Assignor makes the following representations and warranties: (1) The Lease and all collateral documents, if any (all of which documents are collectively called the Lease) are genuine, for business or commercial use, and comply with all applicable laws and regulations, and all signatures are genuine; (2) All signators were of legal age, competent and authorized to execute the Lease; (3) The property which is the subject of the Lease is accurately described; (4) The Lease was executed in connection with the lease to the Lessee of the property described in the Lease; (5) The property has been delivered to and accepted by the Lessee; (6) The property is free from all liens and encumbrances, except the lease interest pursuant to the Lease; (7) No payments have been made on account of the Lease except those cash payments indicated in the Lease, and at the date of this assignment there is no event of default by Lessor or Lessee; (8) The Lease is owned solely by the Assignor free from any lien or encumbrance; (9) There are no offsets, counterclaims, or other defenses to the Lease to the Assignor's knowledge; (10) The Assignor has complied with all filing and recording requirements to perfect any security interest it may have in the leased property; and (11) The Assignor has complied with and will continue to comply with and perform all obligations and duties of Lessor pursuant to the Lease. Should any of these representations or warranties be false, or should any claim of breach of warranty be made by the Lessee or its assigns, the Assignor shall immediately pay to the Assignee, on demand, all unpaid assigned rentals, plus all costs, expenses and legal fees incurred by the Assignee.

The Assignor shall have no authority without the Assignee's prior written consent to accept collections, to repossess, to consent to the return of the property or to modify the terms of the Lease. Any moneys or payments that may be received by the Assignor to which the Assignee is entitled by reason of this assignment shall be received by the Assignor as trustee for the Assignee, and will be immediately delivered to the Assignee without commingling with any other funds of the Assignor. The Assignor agrees that the Assignee may audit its books and records relating to the Lease. In the event the property is sold or disposed of by the Assignee pursuant to law, the Assignor shall be not be entitled to any surplus of that sale or disposition.

The Assignee shall have none of the obligations of Lessor under the Lease.

This assignment shall be construed under California law. None of the terms shall be modified except by a writing by a writing signed by the Assignee. Notice of the acceptance of this assignment is waived.

This Assignment is made pursuant to a Program Agreement dated as of July 18, 2007 (the "Program Agreement") between Assignor and Assignee and shall be deemed to incorporate herein all of Assignor's representations, warranties, covenants and obligations as set forth therein.

Date:_____

Assignee: Trinity Vendor Finance,
          a Division of Bank of the West

By:_____

Title:_____

Date: May 09, 2018

Assignor: Manufacturers Financing Services

By: /s/ Daryl Schra

Title: President

 **MANUFACTURERS FINANCING SERVICES**

Mr. Peter Hill
Great Leisure USA, LLC DBA Co-Lessee Outdoor by Design LLC
6264 Nesbitt Road
Fitchburg, WI 53719

RE: Equipment Lease Agreement No. 2018000450, dated as of April 26, 2018 (the "Contract")

Dear Mr. Hill,

Please be advised that Manufacturers Financing Services has assigned all its right, title and interest in the above-referenced Contract to Trinity Vendor Finance, a Division of Bank of the West. Effective immediately, Trinity Vendor Finance, a Division of Bank of the West will bill, collect and otherwise service the Contract in accordance with its terms.

You are hereby directed and authorized by Manufacturers Financing Services to remit all payments under the Contract as directed by Trinity Vendor Finance, a Division of Bank of the West and to otherwise deal with Trinity Vendor Finance, a Division of Bank of the West on all matters relating to the Contract and the Equipment.

Very Sincerely Yours,
Manufacturers Financing Services

By: _____
Darryl Schoen, President