**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re:                                                              Case No. 8:20-bk-04253-CED

OUTDOOR BY DESIGN LLC,                      Chapter 11

          Debtor.

_____/

**TAIZHOU YUANDA INVESTMENT GROUP CO., LTD. AND**
**TAIZHOU YUANDA FURNITURE CO., LTD.'S MOTION TO COMPEL**

     Taizhou Yuanda Investment Group Co., Ltd. ("TZY Investment") and Taizhou Yuanda Furniture Co., Ltd. ("TZY Furniture," together with TZY Investment, "TZY"), by their undersigned counsel, hereby move pursuant to Federal Rules of Bankruptcy Procedure 2004, 7034 and 7037, Federal Rule of Civil Procedure 37(a)(3)(B)(iv) and Local Rule 7037-1 to compel Debtor Outdoor by Design (the "Debtor") to respond to its Rule 2004 Subpoena (the "Subpoena"), a copy of which is attached hereto as Exhibit A. For the reasons stated below, TZY requests that this Court compel the Debtor to respond to the Subpoenas, which were properly served on it by TZY.

**<u>INTRODUCTION</u>**

    1.    The Debtor's principals and affiliated entities fraudulently transferred millions of dollars—sums which were owed to TZY—to the Debtor. Despite receiving at least $6 million of TZY's money in the last three years, alone, the Debtor inexplicably filed the instant Chapter 11 bankruptcy. In its filings, the Debtor failed to disclose any of these fraudulent transfers. Instead, the Debtor claimed to have virtually no assets remaining.

    2.    Counsel for TZY filed an appearance in the instant bankruptcy and served the Subpoenas on the Debtor to investigate what happened to its money and the claims available to

TZY.  The Debtor did not respond.   Instead, it filed a motion to voluntarily dismiss the Chapter 11 proceeding, a motion to which TZY has objected.

3.       After filing the motion to dismiss, the Debtor's counsel agreed to respond to the Subpoenas.  The Debtor, however, then apparently ceased contacting its own counsel, effectively abdicating its responsibilities pursuant to the subpoenas.

4.       Contemporaneously, TZY sought information in a separate, federal lawsuit that it brought against certain individuals and entities that are also owned or controlled by certain of the Debtor's members —the individuals and entities who initiated the fraudulent transfers—by serving two non-party subpoenas on OBD.  As here, the Debtor has attempted to avoid service and sought to prevent TZY from learning what OBD did with the stolen funds.  The undersigned counsel certifies that, prior to the filing of this motion, they have conferred with Debtor's counsel in good faith to obtain the requested discovery without Court involvement, but have not yet been able to resolve this matter.

## BACKGROUND

5.       TZY is the plaintiff in a lawsuit against several entities owned and controlled by certain individuals who are also members of the Debtor styled *Taizhou Yuanda Investment Group Co., Ltd. and Taizhou Yuanda Furniture Co., Ltd. v. Z Outdoor Living, LLC, et al.*, Case No. 19-cv-875-jdp pending in the United States District Court for the Western District of Wisconsin (the "Wisconsin Lawsuit").[1]  TZY has adduced a number of critical facts from discovery conducted in the Wisconsin Lawsuit that are germane to the issues here.

6.       The Debtor is just one of a group of companies under common ownership and/or control that all operate in the outdoor furniture business.  According to its own filings in this case,

---

[1] For context, an as-filed copy of TZY's Third Amended Complaint in that lawsuit is attached as Exhibit A to TZY's proof of claim filed in this bankruptcy case (*see* Claim Register, Claim No. 24).

the Debtor's equity holders include Don Corning and his wife Lois, Don Corning's son Erin Corning and his wife Tessa Mueller, Don Corning's daughter Kendra Farley and her husband Jason,  Don Corning's daughter Ashley Thomas and her husband Michael Thomas, and Pete Hill and his wife Nancy.

7.      Don Corning, Erin Corning, Kendra Farley, Ashley Thomas, and Pete Hill are also the owners and/or operators of myriad other businesses that import and sell outdoor furniture to American retailers, including:

a.      <u>Z Outdoor Living, LLC ("Z Outdoor")</u>:  Z Outdoor is a limited liability company organized under the laws of Wisconsin, with its sole owner being Casual Products of America, LLC ("CPA"), a Wisconsin company that is owned by Don Corning, a citizen of Wisconsin.  Don Corning in charge of overseeing Z Outdoor, Don Corning's son, Erin Corning, sources and sells products for Z Outdoor, Lois Corning provides sales support, Jason Farley works in the warehouse, Ashely Thomas is in sales, and, until very recently, Pete Hill was Z Outdoor's CFO.

b.      <u>AFG LLC ("AFG")</u>: AFG is a limited liability company organized under the laws of Wisconsin.  It is solely owned by Casual Products of America ("CPA"), a Wisconsin company that is solely owned by Don Corning. Kendra Farley, Don Corning's daughter, sources and sells products for AFG and, until very recently, Pete Hill was AFG's CFO.

c.      <u>AMG LLC ("AMG")</u>:  AMG is a limited liability company organized under the laws of Wisconsin whose sole owner and member is Erin Corning.

Since April 2017, AMG has had no employees, and since 2018, AMG has been an inactive corporate entity.

    d.    <u>Outdoor Brands International, Inc</u>. ("OBI"): OBI is a limited liability company organized under the laws of Wisconsin.  Don Corning, Pete Hill, Erin Corning, Kendra Farley, and Ashely Thomas are owners of OBI.

8.    In the last two years, Donald Corning, Erin Corning, Pete Hill, and Kendra Farley—all members of the Debtor—directed the fraudulent transfer of millions of dollars, which includes sums due to TZY—to the Debtor, none of which is listed on the Debtor's bankruptcy schedules or filings.

9.    TZY manufactured and sold outdoor patio furniture and related items to Z Outdoor and AFG for sale by Z Outdoor and AFG to their customers, invoicing Z and AFG at least $35 million for the goods.  Neither Z Outdoor nor AFG disputed the invoices.  To the contrary, Z Outdoor and AFG sold TZY's products to American retailers, such as Menards, collecting at least $36,293,215 from the retail customers.  AFG and Z Outdoor, however, paid TZY a fraction of the amount it owed TZY, approximately $21,234,331.

10.    Rather than pay TZY the amounts it was owed, Z Outdoor and AFG transferred at least $6 million to the Debtor—often funneling those sums through OBI and/or AMG.  Indeed, Z Outdoor's and AFG's CFO Pete Hill acknowledged that the $6 million transferred to the Debtor was from funds meant for TZY.  TZY is unaware what happened to that cash after it was transferred to the Debtor.

11.    Don Corning claims that these transfers were loans to the Debtor.  TZY, however, did not agree to loan $6 million to the Debtor, and there is no evidence that either the Debtor, Z Outdoor, or AFG ever treated the transfers as loans or expected these "loans" would be repaid.

These transfers were not documented as loans: there are no written loan documents, there is no applicable interest rate and no maturity date, and the Debtor never made payments to AFG or Z Outdoor after the supposed loans were made. In fact, according to Z Outdoor's own CFO, Z Outdoor had no intention of collecting the "loans" from the Debtor.

12.     As further confirmation that these transfers were never intended to be treated as loans and, in fact, that they were not loans, the Debtor did not list these "loans" on its bankruptcy schedules, did not list Z Outdoor or AFG as creditors, and neither Z Outdoor nor AFG filed proofs of claim in this bankruptcy case.

13.     The Debtor's bankruptcy schedules list only approximately $300,000 in cash and cash equivalents as of the petition date (*see* Dkt. No. 1, Schedule A/B). This represents only a small fraction of the cash that the principals who own the Debtor and all its related companies have acknowledged was transferred to the Debtor. TZY is unaware what happened to the large cash transfers that were made to the Debtor.

14.     To investigate TZY's potential claims and uncover what OBD did with its money, counsel for TZY filed an appearance in this proceeding. Then, on November 25, 2020, it served the Subpoenas on the Debtor, seeking information related to the transfers and the Debtor's finances.

15.     Similarly, on December 21, 2020 in the Wisconsin Action, counsel for TZY served a subpoena on OBD to seek information related to the transferors in order to pursue its claims in that matter against the transferors, the affiliate entities and individuals.

16.     In the instant Bankruptcy proceeding, the Debtor did not respond by the date indicated on the Subpoenas (the "Compliance Date"). Instead, within a week of issuance of the subpoenas, the Debtor filed a motion to dismiss the bankruptcy proceeding. TZY's counsel

contacted Debtor's counsel after the Compliance Date had passed, and Debtor's counsel indicated the Debtor would comply with the Subpoenas.

17.    A week later, however, the Debtor had still failed to produce any of the requested documents or identify dates a representative would sit for a deposition.  TZY's counsel contacted Debtor's counsel again.  This time, Debtor's counsel explained that he had been unable to reach his client, despite his diligent, repeated attempts.

18.    Likewise, the Debtor sought to avoid its discovery obligations in the Wisconsin case.

19.    Pete Hill was the registered agent for the Debtor.  Mr. Hill was also a Defendant and the CFO of the corporate Defendants in the Wisconsin action.   Defendants' counsel in the Wisconsin case, Mr. Palmersheim, represented Mr. Hill at his deposition in Wisconsin.  TZY contacted Mr. Palmersheim on December 19, 2020 to inquire whether he could accept service of a subpoena directed to the Debtor's agent, Mr. Hill, or whether TZY should proceed with service on Mr. Hill directly.  Mr. Palmersheim indicated that he emailed with Mr. Hill and was not authorized to accept service.

20.    Unable to serve Mr. Hill's attorney, TZY's counsel sought to serve Mr. Hill by certified mail, but that mail was returned.

21.    As a result, on January 5, 2021 Counsel instead sent a process server to serve two subpoenas on OBD through its Registered Agent, Mr. Hill, at Mr. Hill's business address—an address shared by AMG, OBI, the Debtor, and other affiliated entities—which appeared to be current on the Wisconsin Secretary of State website as of that date.

22.    The process server was met not by Mr. Hill but by Mr. Erin Corning.  Mr. Corning, himself a member of OBD, declined to accept service of the subpoenas.

23.     First, Mr. Corning represented that Mr. Hill was away from his office, then upon learning that the subpoenas were directed to OBD, he quickly changed his story, claiming Mr. Hill was no longer employed at the business address and that Mr. Corning did not know if or when Mr. Hill would return.

24.     Mr. Corning further represented to the process server that OBD had gone out of business years ago and no longer existed.

25.     TZY subsequently learned through an update to the Wisconsin Secretary of State website on January 8, 2021 that mere days after TZY contacted Mr. Palmersheim regarding service on OBD, Mr. Hill resigned as the registered agent for the Debtor effective December 23, 2020, and no replacement registered agent was named.

## ARGUMENT

26.     Rule 2004(c) of the Federal Rules of Bankruptcy Procedure provides for the production of documents consistent with Rule 9016, which incorporates Rule 45 of the Federal Rules of Civil.  Rule 2004(b), provides for the examination of the debtor or another entity with knowledge of the debtor's "acts, conduct, or property or to the liabilities and financial condition."

27.     Consistent with this Court's rules and procedures, TZY served the Subpoenas on the Debtor, seeking information related to the Debtor's financial condition and conduct. Specifically, TZY sought information related to the millions of dollars of TZY's money that was fraudulently transferred to the Debtor, money which has mysteriously disappeared.

28.     The Debtor did not object to the subpoenas.  To the contrary, the Debtor initially indicated that it would comply before becoming unreachable.

29.     The Debtor has thus waived any objection to the Subpoenas, and the Debtor should be required to produce all responsive documents within its possession, custody, or control and

produce a representative for a deposition. *See LM Insurance Corporation v. Henneford Circus Inc.*, 2014 WL 12616980, *1 (M.D. Fla. Dec. 2, 2014) ("By failing to respond to [p]laintiff's discovery, [d]efendant waived all of its objections to the interrogatories, requests for production, and requests for admission."); *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Co. Corp.*, 630 F. Supp.2d 1332, 1340 (M.D. Fla. 2007) ("As a general rule ,a responding party's failure to make a timely and specific objection to a discovery request waives any objection based on privilege.").

30.     TZY has attempted to resolve this dispute in good faith prior to the filing of this Motion to Compel.

WHEREFORE, TZY respectfully requests that the Court (i) grant the Motion to Compel; (ii) compel the Debtor to respond to the Request for Production; (iii) compel the Debtor to produce a representative or representatives to testify as to the deposition topics identified in the Subpoenas; (iv) find that any objections to the Subpoenas have been waived; (v) award fees and costs to TZY in having to bring this Motion; and (vi) for all other relief the Court deems just and proper.

Dated: January 20, 2021.

Respectfully submitted,

*/s/ Megan W. Murray*
Megan W. Murray
Florida Bar. No. 0093922
UNDERWOOD MURRAY, P.A.
Regions Building
100 N. Tampa St., Suite 2325
Tampa, FL  33602
Tel: (813) 540-8402
Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com

*Attorneys for Taizhou Yuanda Ivestment Group Co., Ltd., Taizhou Yuanda Furniture Co., Ltd., and Taizhou Yuanda Travelling Articles Co., Ltd.*

- and –

Jason M. Torf *(admitted pro hac vice)*
Justin Steffen *(admitted pro hac vice)*
ICE MILLER LLP
200 W. Madison St., Suite 3500
Chicago, IL  60606
Tel: (312) 726-6244
Email: jason.torf@icemiller.com
        justin.steffen@icemiller.com

*Co-Counsel to Taizhou Yuanda Investment Group
Co., Ltd. and Taizhou Yuanda Furniture Co., Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court and has been furnished electronically to all those parties registered to receive service via CM/ECF this 20th day of January, 2021.

*/s/ Megan W. Murray*
Megan W. Murray

# EXHIBIT A

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Middle_____ District of _____Florida, Tampa Division_____

In re __Outdoor By Design LLC__
                    Debtor

Case No. __8:20-bk-04253-CED__

Chapter __11__

_(Complete if issued in an adversary proceeding)_

_____
                    Plaintiff
                      v.
_____
                    Defendant

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Outdoor By Design LLC c/o Jerry Camp, Registered Agent
     7839 Fruitville Road, Sarasota, FL  34240
                    _(Name of person to whom the subpoena is directed)_

[X]  _Testimony_: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:  See attached Exhibit 1

| PLACE  Underwood Murray, P.A., 100 N Tampa, Suite 2325, Tampa, FL 33602 | DATE AND TIME |
|---|---|
| 813-540-8403 \*\*by videoconference (link to be provided) | December 22, 2020 at 9:00 am EST |

The deposition will be recorded by this method:
     Court Reporter

[X]  _Production_: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
     See attached Exhibits A and B

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  11/25/2020
       _____

        CLERK OF COURT

                                    OR

_____            /s/ Megan W. Murray
_____            _____
_Signature of Clerk or Deputy Clerk_            _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_  Taizhou Yuanda Investment
  Group Co., Ltd., et al. ("TZY")____ ,  who issues or requests this subpoena, are:

_____

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

\* The witness fee check will be sent by separate correspondence.

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* _____

on *(date)* _____ .

[X] I served the subpoena by delivering a copy to the named person as follows: ___Outdoor By Design LLC_____

___c/o Jerry Camp, Registered Agent, 7839 Fruitville Road, Sarasota, FL  34240_____

_____via Certified Mail_____ on *(date)* ___11/25/2020_____ ; or

[ ] I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


 I declare under penalty of perjury that this information is true and correct.

Date: ____11/25/2020_____

/s/ Megan W. Murray
_____
*Server's signature*

 Megan W. Murray
_____
*Printed name and title*

Underwood Murray, P.A., 100  N. Tampa St., Suite 2325
Tampa, FL 33602
mmurray@underwoodmurray.com
_____
*Server's address*


Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A: DEFINITIONS AND INSTRUCTIONS

## DEFINITIONS

1.     The terms "You," "Your," or "Outdoor by Design" mean Outdoor by Design, LLC, including Your employees, partners, subsidiaries, affiliates, agents, staff members, or representatives.

2.     The term "TZY" means, collectively, Taizhou Yuanda Investment Group Co., Ltd., Taizhou Yuanda Furniture Co., Ltd., and Taizhou Yuanda Travelling Articles Co., Ltd., including their members, officers, directors, employees, partners, subsidiaries, affiliates, agents, staff members, representatives, assignees, predecessors, or successors.

3.     The term "Affiliated Entities" means, collectively, Z Outdoor Living, LLC ("Z Outdoor Living"); AFG, LLC; Casual Products of America, LLC ("Casual Products of America" or "CPA"); Alliant Furniture Group, LLC; AMG International, LLC ("AMG"); B-Cool Technologies, LLC; Outdoor Brands International, LLC; and Outdoor Innovations Group, LLC, including their members, officers, directors, employees, partners, subsidiaries, affiliates, agents, staff members, representatives, assignees, predecessors, or successors.

4.     The term "Bankruptcy Creditors" means, collectively, any individual or entity listed as a creditor on Outdoor by Design's bankruptcy filings.

5.     The terms "concerning," "relating to," "related to," "referring or relating to," "relate to," or "refer to," "referencing," mean to address, comprise, consider, reflect, record, reference, memorialize, mention, describe, discuss, contradict, evaluate, consider, review, pertain to, summarize, or report on the subject matter of the Request or to have been created, generated, or maintained in connection with or as a result of the subject matter of the Request.

6.     The term "communication(s)" means any conveyance, disclosure, transfer, transmittal, or exchange of oral or written information (in the form of facts, ideas, inquiries, or otherwise) between or among one or more persons or entities.

7.     The terms "Document" and "Documents" include any written, printed, typed, photocopied, photographed, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds, or symbols, or any combination thereof. The terms include also, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports, and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of meetings or communications, electronic mail/messages and/or email, texts, instant messaging, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, and all other data compilations from which information can be obtained, including, without limitation, thumb drives, external hard drives, electromagnetically sensitive storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks, and magnetic tapes. The term "Document" also means every copy of a document where such copy is not an identical duplicate of the original.

2

I\15572241.1

## INSTRUCTIONS

1.      TZY seeks the production of the Documents set forth in the numbered Requests below that are in Your possession, custody, or control.

2.      In construing these Requests, You shall give effect to the Definitions set forth above. The Definitions apply whether or not the defined term is capitalized in the Request.

3.      Undefined words and terms should be given their common meaning. If You are unsure of the definition of a particular word or term that is not defined in the Definitions set forth above, You shall use the definition that You believe to be the most accurate and state that definition in Your response.

4.      Each Request for documents shall be construed independently and no Request shall be viewed as limiting the scope of any other Request.

5.      Where the context in the Requests makes it appropriate, each singular word shall include its plural and each plural word shall include its singular. The words "any," "and," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery all responses that might otherwise be construed to be outside its scope.  Each of the following words includes the meaning of every other word: "each," "every," "all," and "any." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

6.      In responding to these Requests, You shall furnish such information and documents in Your possession, custody, or control, including information that is in the possession, custody, or control of Your agents, investigators, consultants, and (subject to any otherwise applicable privileges) attorneys.

3

I\15572241.1

7.      Documents produced shall be numbered consecutively, with a prefix identifying the name of the producing entity. For each Document produced, indicate the custodian from whose custody or possession that Document was collected.

8.      Electronically stored information ("ESI") shall be produced in native form, with original metadata. Each production of ESI shall be accompanied by a metadata load file that contains links to the produced files via "Native Link" data values, as well as the original file name, and file path. Each native file shall be renamed with a Bates number and delivered sequentially without gaps. Any ESI that is not text-searchable in native form shall be rendered with OCR software to produce searchable text. Any hard copy documents scanned or otherwise converted to electronic form and produced in electronic form shall be produced as single page TIFF images with document-level (multi-page) searchable text (.TXT) files, rendered with OCR software. The source of the documents (e.g., hard copy, scanned documents) shall be identified. Load files for such productions shall include document breaks which indicate the start and stop of each Document, and sequential Bates numbering without gaps.

9.      If You object to any part of a Request, set forth the basis for Your objection and respond to all parts of the Request to which You do not object.

10.     Each Document requested herein must be produced in its entirety, regardless of whether You consider the entire Document to be relevant or responsive to these Requests. If You have redacted any portion of a Document, stamp the word "redacted" on each page of the Document that You have redacted. Privileged redactions must be included in a privilege log (per Instruction 11, below); non-privileged redactions must also be included in a log describing the basis for the redaction.

4

11.     If any Document is withheld from production, in whole or in part, based on a claim of privilege, provide a privilege log, which, at a minimum, shall specify, as to each Document:

      a.  Author(s);

      b.  Addressee(s) and recipient(s) of the Document, including Persons copied (cc'd) or blind-copied (bcc'd) on any transmittal of the Document;

      c.  Your basis for withholding the Document, including the specific nature of the Date of the Document and, if applicable, any transmittal(s);

      d.  The specific privilege or protection from disclosure asserted;

      e.  A description of the subject matter of the Document sufficient to allow Defendants and the Court to assess the applicability of the privilege or protection asserted;

      f.  The Bates page range or page length of the Document; and

      g.  The Request(s) to which the Document is responsive.

12.     If no document responsive to a Request exists, please state so in Your response.

13.     The relevant time period for these Requests is from January 1, 2017 through the date of these Requests, unless otherwise stated. Your answers shall include responsive documents created, sent, or received during that period. Defendants reserve the right to amend or revise the relevant time period if the Court orders discovery from a different time period or the parties agree to a different time period.

I\15572241.1

## EXHIBIT B: REQUESTS

**REQUEST NO. 1**     All Documents and Communications relating to the financial condition of Outdoor by Design, including but not limited to tax returns and financial statements dating back to January 1, 2017.

**RESPONSE:**

**REQUEST NO. 2**     All Documents and Communications relating to capital contributions, loans, donations, or other items of value provided to Outdoor by Design, including documents sufficient to reflect the amount and terms of those contributions, donations, or loans, any payments made on those loans, and the current repayment status.

**RESPONSE:**

**REQUEST NO. 3**     All Documents and Communication relating to the ownership of Outdoor by Design, including changes in ownership over time and the reasons therefor.

**RESPONSE:**

**REQUEST NO. 4**     All Documents and Communications relating to the Affiliated Entities, including any direct or indirect transfers of money or other items of value by, for, or between Outdoor by Design, or any of its other members, and any of the Affiliated Entities.

**RESPONSE:**

**REQUEST NO. 5**     All Documents and Communications relating to transfers from Outdoor by Design to any member, or family member of any member, of Outdoor by Design.

**RESPONSE:**

**REQUEST NO. 6**    All Documents and Communications relating to any direct or indirect transfers of money or other items of value by, for, or between Outdoor by Design, or any of its other members, and its Bankruptcy Creditors.

**RESPONSE:**

7